IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *Plaintiff,* v. **JOSÉ L. BERRÍOS-AQUINO,** *Defendant.* | **CRIMINAL NO. 22-473 (DRD)** |

**OPINION AND ORDER**

The defendant, José L. Berríos-Aquino is charged with a One-Count *Indictment* for knowingly possessing a machinegun, that is, one Sharp Brothers pistol, model Jack-9, bearing serial number J9-03124, that had been modified so that it was capable of firing more than one shot, without manual reloading, by a single function of the trigger, all in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). *See* Docket No. 3. The Honorable Magistrate Judge Marshall D. Morgan granted bail and ordered defendant to remain on bail pending trial. The same day, the Government filed an emergency motion requesting the stay of the Magistrate Judge's order and a *De Novo Review*. *See* Docket No. 10. Upon receiving the Government's request, the Court stayed the release order entered by Honorable Magistrate Judge Morgan pending a *de novo* bail evaluation and hearing. *See* Docket No. 11. A *Response in Opposition* was subsequently filed by the defendant (Docket No. 15). Five (5) days thereafter, the defendant reiterated his request. *See* Docket No. 18.

The Court held a *De Novo Bail Hearing* on November 16, 2022. The parties argued their positions at length. Based upon the evidence proffered by the parties during the hearing, the

Court took this issue under advisement, and ordered that the defendant remain detained pending its determination.

The Court is now required to perform a *de novo* review pursuant to *United States v. Tortora*, 922 F.2d 880, 883, No. 4 (1st Cir. 1990), of the contested release of defendant pending trial issued by Honorable Magistrate Judge Morgan.

## I.  THE STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.*, allows detention when "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community . . ." 18 U.S.C. §§ 3142(b) and (e). Essentially, "[t]he government must establish risk of flight by a preponderance of the evidence; and/or dangerousness by clear and convincing evidence." *United States v. Mieses-Casiano*, 161 F. Supp. 3d 166, 167 (D.P.R. 2016); *see United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir.2001); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir.1991).

Once probable cause is found that a defendant has committed an offense as listed on § 3142(e)(2), a "rebuttable presumption arises that no condition or combination of conditions exist that will reasonably assure the appearance of the defendant and the safety of the community." In order for a defendant to remain detained, the government must establish either risk of flight by a preponderance of the evidence or danger to the community by clear and convincing evidence. 18 U.S.C. § 3142(f); *see United States v. Patriarca,* 948 F.2d 789, 790 (1st Cir. 1991). "[T]he presumption serves to shift the burden of production and to require that the defendant introduce 'some evidence' to the contrary." *United States v. O'Brien*, 895 F.2d 810, 815 (1st Cir. 1990). However, "the government retains the burden of proving that no conditions

2

will reasonably assure the defendant's appearance." *Id.* Notwithstanding, the First Circuit has cautioned that [t]he presumption [] does not cease to have effect once the defendant has come forward with some evidence. Instead, it continues to operate as one factor to be considered by the court in determining whether the defendant must be detained." *Id.; see United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985).[1]

Finally, in making its final determination after receiving the rebuttal pursuant to § 3142(g), the judicial officer must consider among other statutory factors "the nature and circumstance of the offense," "weight of the evidence," "history and characteristics of the person including . . . character, physical and mental condition, family history . . . past conduct" and the "danger posed to the community" by his release. *See United States v. Patriarca*, 948 F.2d at 791-92.

Upon review, the Court finds that the statutory presumption does not apply here as the defendant is charged with the knowing possession of a machinegun. Said offense is not listed in §§ 3142(e)(2) and (3), as an offense in which the detention presumption is applicable. However, pretrial detention is authorized pursuant to § 3142(f)(1)(E) as to "any felony that is not otherwise a crime of violence that involves . . . the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon . . ." In any event, pretrial

---

[1] In *United States v. O'Brien*, 895 F.2d at 814, the court abrogated *Jessup* as to the standard appellate review. The First Circuit adopted the appellate standard of review enunciated in *United States v. Bayko*, 774 F.2d 516, 520 (1st Cir. 1985),, "an independent review . . . tempered by deference to the district court's firsthand judgment of the situation" rather than the clearly erroneous or other highly deferential standard utilized in *Jessup*, 757 F.2d at 387-388, *United States v. Fortna,* 768 F.2d 243-,250 (4th Cir. 1985), *United States v. Chimurenga,* 760 F.2d 400, 405 (2nd Cir. 1985), and *United States v. Williams*, 753 F.2d 329, 333 (4th Cir. 1985). *O'Brien*, however, reiterates and follows the standard of burden shifting, presumption and of preponderance of the evidence of *Jessup* stated herein applicable for bail determinations at District Court level, 895 F.2d at 815.

detention is also authorized when there is "a serious risk that [the defendant] will flee." 18 U.S.C. § 3142(f)(1).

The Court held a *De Novo* hearing on November 16, 2022. The defendant was represented by counsel Allan Rivera-Fernández. The United States was represented by counsel Linet Suárez. The Court proceeded via proffer, as authorized by *United States v. Acevedo Ramos*, 755 F.2d 203, 208 (1st Cir. 1985) (authorizing proceeding via proffer of evidence based on Congressional intent citing the House of Judiciary Committee HR. Rep. No. 97, 91 Congress 2nd Session, 182, 184 (1970). Thus, the Court proceeds to examine the criteria under the law at 18 U.S.C. § 3142(g)(1),(2),(3),(4).

## II.     LEGAL ANALYSIS

1.     **The Nature and Circumstances of the Offense**: The defendant is charged for knowingly possessing a machinegun, that is, one Sharp Brothers pistol, model Jack-9, bearing serial number J9-03124, that had been modified so that it was capable of firing more than one shot, without manual reloading, by a single function of the trigger, all in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). *See* Docket No. 3. The charge constitutes a serious offense since the defendant is charged with possession of a machinegun. This criteria, taken by itself, seems to favor detention but the Court must examine all statutory requirements and then decide on which side the "preponderance of the evidence" as to "flight of risk" and "clear and convincing evidence" as to "danger to the community."

2.     **The Weight of the Evidence**: The weight of the evidence against Berríos-Aquino is strong. The Government has proffered video evidence of the defendant shooting the machinegun that was seized and field tested. An additional video of the defendant instructing an individual as

to how to shoot machineguns was also proffered. And a video of the defendant discussing how to use what appears to be a firearm from his balcony while making shooting noises was also proffered through a power point presentation. Voice recordings discussing the sale of force reset triggers were also presented. There were several voicenotes that were taken from the defendant's registered phone number from after he realized that he was being surveilled where he made defiant and concerning remarks, such as:

> Fucker, those are cheap ass private investigators. Bro, they're going to get me mad one of these days, with half a pill in the head, and I am not going to fuck them over as in, as in, as in, mess them up, but I am going to send them, fucker, a one way trip through the back window of the, of the, of the, of the jeep, fucker. To [U/I] at least shatter the window, and the, the trunk's back panel so it won't hit anyone. They'll learn how to be men again. They're either going to shit themselves or they're going to tell their boss to shove the company up his ass.

Docket No. 10 at p. 9.

The defendant proffered an *Open Letter to All Federal Firearms Licensees* dated March 22, 2022. Essentially, the letter provides that some force reset triggers are illegal. Yet, "some after-market triggers have similar components but also incorporate a disconnector or similar feature to ensure that the trigger must be released before a second shot may be fired and may not be machineguns." As such, it has been problematic to distinguish between legal and illegal force reset triggers.

Next, the defendant attempted to proffer expert opinions as to the legality of some force reset triggers, and ongoing cases on sister circuits as to a similar issue as herein. However, the Court agrees with the Government inasmuch as this was a detention hearing, and as far as the indictment itself and the technicalities of whether the machinegun which the defendant was

possessing at the time is a machinegun under the law, considering the force reset trigger and its illegality, this is not something that should be up for consideration at this time.

The defendant further claims that the machinegun subject of the indictment is registered to another individual. Yet, the Government argues that the defendant was in possession of the machinegun at the date of the indictment.

Lastly, the defendant claimed that the videos proffered by the Government were taken at a shooting range, and one of them at home. Hence, the use of the firearms was done in a lawful business and in the sacred sanctity of the defendant's home, in a rightful exercise of the Second Amendment. Yet, as the Government correctly argues, the possession of a machinegun is illegal in a shooting range as well as in the defendant's home.

3.     **The history and characteristics of the accused**: The defendant does not have a criminal record, but is an experienced gunsmith who has knowledge as to the dangers of machineguns and is expected to have knowledge as to the legality of said weapons. Additionally, as a gunsmith, the defendant has ample access to firearms and firearms parts. Furthermore, the Government has proffered video evidence of the defendant facilitating the sale and use of force reset triggers, which are considered "machinegun conversion devices." Docket No. 10 at p. 11. On the other hand, the remarks made by the defendant upon suspecting that he was being surveilled are particularly concerning as they are defiant against authority and because of the fact that he uses controlled substances on a daily basis, namely, marijuana, and has access to firearms.

In turn, the defendant proffered that he does not pose a danger to the community as he does not have a prior criminal record, he possesses a bachelor's degree, started his master's

degree, a firearm's permit, an instructor of firearms' permit, a steady job at the Mudafort Armory and even goes to church on Tuesdays and Thursdays. Additionally, his long-time consensual partner has been identified and cleared as suited to be his third-party custodian. The U.S. Probation Officer has confirmed that the defendant can be successfully monitored and will appear to all proceedings.

In sum, the defendant requests that in order to eliminate the risk of a potential danger to the community, the Court impose additional conditions to minimize a potential danger to the community, and be released upon these conditions. *See* Docket No. 15.

The statutory "characteristics of a person" although containing some aspects, which are favorable to the defendant, are seriously eroded by the untrustworthiness demonstrated in the actions that brought him before the Court. The defendant was gunsmith who is well acquainted as to the legality of weapons and weapons additional parts. Defendant did the exact opposite of what is expected from a person who has a firearms' permit and an instructor of firearms' permit. And most concerning, he potentially facilitated the sale and use of force reset triggers, which are considered "machinegun conversion devices."

4. **The nature and gravity of the danger posed by the person's release**: The defendant was not only indicted for the possession of a machinegun but is seen in video evidence facilitating the sale of force reset triggers and instructing individuals as to how to use machineguns. The identity of the persons who are acquiring said devices from the defendant are unknown as is their motive behind of buying such items. Therefore, the Court agrees with the Government inasmuch as the defendant's conduct may be very well encouraging unlawful possession of a machinegun. *See* Docket No. 10 at p. 11.

The defendant, in turn, argues that he is a certified and licensed gunsmith that has no blemish on his record before now. Accordingly, he is "holding weapons as part of his job and as a sacred right under the Second Amendment." Docket No. 15 at p. 13. Essentially, "[i]t is highly debatable that a 'forced reset trigger' is a machinegun as it required the pressure and release of the trigger by the finger to allow a bullet to be fired." *Id.* And ultimately, the defendant claims that the Government cannot proffer that any sale has been made outside the Gunshop, which is a lawful establishment for the purchase of weapons. *See id.*

Having reviewed all the evidence proffered by the parties, and particularly the defiant voice recordings of the defendant once he suspected that he was being surveilled, it is evident that there is more than a mere possibility that the defendant will pose a significant danger to the community. However, recognizing the U.S. Probation Officer's pretrial report, and his recommendation that the defendant be released while awaiting trial, the Court will impose additional restrictions to those established by Hon. Magistrate Morgan.

### III.    CONCLUSION

Upon carefully examining the totality of the circumstances and all the evidence that was proffered as well as all available release conditions, the Court deems that **ADOPTING IN PART** Hon. Magistrate Morgan's conditions for release while restricting the defendant's release to home detention with location monitoring is appropriate. Accordingly, the defendant is hereby restricted to his residence at all times except for employment; education; religious services; medical substance abuse, or mental health treatment, attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or the Court. This is a proper balance between the nature and circumstances of the offense, the weight

of the evidence, the history and characteristics of the accused and the danger he possesses to the community, and the other circumstances raised by the defendant in support of a pretrial release.

Consequently, considering the nature and circumstances of the offense, the weight of the evidence, the history and characteristics of the accused and the danger he possesses to the community, Defendant, José L. Berríos-Aquino is to be in **HOME DETENTION AND LOCATION MONITORING** pending trial.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, on this 18th day of November, 2022.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge