**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>Plaintiff<br><br>v.<br><br>**JOSE L. BERRIOS AQUINO**<br><br>Defendant | **CRIMINAL NO. 22-CR-473 (DRD)** |

**DEFENDANT JOSÉ L. BERRÍOS AQUINO'S
MOTION TO DISMISS**

**TO THE HONORABLE COURT:**

**COMES NOW**, defendant **Jose L. Berrios-Aquino**, by and through the undersigned attorney, and very respectfully **ALLEGES** and **PRAYS** as follows:

Defendant hereby moves this Court to dismiss the indictment in this case, charging one violation of 18 U.S.C. §922(o). The application of 18 U.S.C. §922(o) to Mr. Berrios-Aquino it is inconsistent with the principles of due process and the Second Amendment rights of the defendant. The indictment under 18 U.S.C. § 922(o) should be dismissed as the statute, which criminalizes the possession of a machine gun, is overly broad and vague, thereby violating the defendant's constitutional rights. The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) exceeded its statutory authority by issuing a memorandum declaring that Forced Reset Triggers are machineguns.

## I. INTRODUCTION

On March 22, 2022, the ATF, through an open letter to all Federal Firearms Deales (FFL), determined that Forced Reset Triggers (FRT) were machine guns.

On November 4, 2022, defendant Berrios-Aquino, a 15 years of experience gunsmith and firearms instructor in good standing, was unnecessarily arrested by ATF agents and charged with a violation to 18 USC 922(o) for possession of an ALLEGED machinegun, which turned out to be an FRT.

## II.   THE OVERTURNED CHEVRON DOCTRINE

On June 14, 2024, the U.S. Supreme Court decided *Garland v. Cargill*, 602 U.S.___ (2024), holding that semi-automatic rifles equipped with bump stocks are not "machineguns" under the National Firearms Act of 1934 (NFA), and that the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) **exceeded its statutory authority by issuing a rule providing that they are**.

The NFA defines "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, *by a single function of the trigger*." 26 U.S.C. § 5845(b). Semi-automatic rifles equipped with bump stocks use the gun's recoil to help rapidly and repeatedly pull the gun's trigger. After the 2017 Las Vegas mass shooting, which involved a semi-automatic rifle with a bump stock, ATF issued a rule providing that such firearms qualify as machineguns. A gun owner challenged the rule, and the District Court ruled for ATF. The Fifth Circuit reversed and ruled for the gun owner.

The Supreme Court held that a semiautomatic rifle equipped with a bump stock is not a "machinegun" under 26 U.S.C. § 5845(b). The Court focused on two portions of the statutory text. First, it held that a semiautomatic rifle equipped with a bump stock cannot fire more than one shot "by a single function of the trigger." Second, the Court held that even if a

-

semiautomatic rifle equipped with a bump stock could fire more than one shot "by a single function of the trigger," it could not do so "automatically" because firing multiple shots requires additional actions, including maintaining forward pressure on the rifle's front grip with the non-trigger hand. Without giving any deference to ATF's interpretation of the Act, the Court affirmed the judgment holding that **its rule exceeded its authority**.

Under the *Chevron* doctrine, courts have sometimes been required to defer to "permissible" agency interpretations of the statutes those agencies administer—even when a reviewing court reads the statute differently. *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837. *Id.*, at 843

On June 28, 2024 the U.S. Supreme Court decided LOPER BRIGHT ENTERPRISES ET AL. *v.* RAIMONDO, SECRETARY OF COMMERCE, ET AL., 603 U. S. \_\_\_ (2024), and determined that the Administrative Procedure Act requires courts to exercise their independent judgment in deciding whether an agency has acted within its statutory authority, and courts may not defer to an agency interpretation of the law simply because a statute is ambiguous; *Chevron* is overruled.

This case further stated that article III of the Constitution assigns to the Federal Judiciary the responsibility and power to adjudicate "Cases" and "Controversies"—concrete disputes with consequences for the parties involved. The Framers appreciated that the laws judges would necessarily apply in resolving those disputes would not always be clear, but envisioned that **the final "interpretation of the laws" would be "the proper and peculiar province of the courts."** The Federalist No. 78, p. 525 (A. Hamilton). As Chief Justice

Marshall declared in the foundational decision of *Marbury* v. *Madison*, "[i]t is emphatically **the province and duty of the judicial department to say what the law is**." 1 Cranch 137, 177. In the decades following *Marbury*, when the meaning of a statute was at issue, the judicial role was to "interpret the act of Congress, in order to ascertain the rights of the parties." *Decatur* v. *Paulding*, 14 Pet. 497, 515.

### III. FORCED RESET TRIGGER

A forced reset trigger, as its name implies, forces the trigger to reset rapidly after each shot. In traditional semi-automatic firearms, the shooter manually releases the trigger after a shot, allowing it to reset, before firing again. However, with the FRT, the reset is expedited due to a shorter travel, enabling faster subsequent shots.

Once the shooter pulls the trigger and the gun fires, the bolt carrier's rearward motion resets the trigger. This mechanism pushes the trigger back to the shooter's finger, readying it for another immediate shot. The trigger mechanism is thereby reset to the original position and the weapon may fire again only after the trigger has reset, but only by engaging the trigger a second time and thereby initiating a new firing cycle. For each shot, the shooter must engage the trigger and then release the trigger to allow it to reset. Any additional shot fired after one cycle is the result of a separate and distinct "function of the trigger."

By doing so, the FRT allows for a more rapid rate of fire without making the firearm fully automatic. However, the perceived high rate of fire has confused

some (including the ATF) even though it falls under the physical definition of semi auto.

So, a semiautomatic rifle equipped with an FRT cannot fire more than one shot "by a single function of the trigger" because it requires the trigger to reset. And also, a semiautomatic rifle equipped with an FRT cannot fire "automatically" because firing multiple shots requires additional actions, including maintaining forward pressure on the rifle's front grip with the non-trigger hand, as a semiautomatic rifle equipped with a bump stock would too.

### IV. THE INDICTMENT UNDER 18 USC 922(o) SHOULD BE DISMISSED AS THE DEFINITION OF MACHINE GUN IS INCONSISTENT WITH THE OVERTURNED CHEVRON DOCTRINE

In this case, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the agency charged with enforcing 18 USC 922(o), has interpreted the statute in a manner that is inconsistent with its plain language and legislative intent. The ATF's interpretation effectively expands the scope of the statute beyond what Congress intended.

The indictment under 18 USC 922(o) should be dismissed as it is predicated on an overly broad and ambiguous definition of a "machine gun" that is inconsistent with the principles of the overturned Chevron doctrine. The Chevron doctrine, as overturned, no longer allows for administrative agencies to interpret ambiguous statutory terms, and instead requires clear and unambiguous statutory language.

The definition of a "machine gun" under 26 USC 5845(b) is ambiguous and overly broad, encompassing any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without

manual reloading, by a single function of the trigger. This definition is subject to multiple interpretations and does not provide clear guidance on what constitutes a "machine gun".

In the case of Staples v. United States, 511 U.S. 600 (1994), the Supreme Court held that the term "machine gun" requires a specific intent or knowledge regarding the weapon's automatic firing capabilities. (https://supreme.justia.com/cases/federal/us/511/600/). This interpretation narrows the definition of a "machine gun" and is inconsistent with the broad definition provided in 26 USC 5845(b).

Furthermore, in the case of United States v. Olofson, 563 F.3d 652 (7th Cir. 2009), the court held that a firearm that shoots more than one shot with a single pull of the trigger, regardless of malfunction or design, is a machine gun under 18 USC 922(o). (https://caselaw.findlaw.com/us-7th-circuit/1499187.html). This interpretation further broadens the definition of a "machine gun" and is inconsistent with the specific intent requirement established in Staples.

We must remember that this case is based not on an official final ruling but by a memorandum issued by ATF to FFL Dealers declaring that Forced Reset Triggers are machineguns.

Given the ambiguity and inconsistency in the definition of a "machine gun", the indictment under 18 USC 922(o) should be dismissed, clearly ATF exceeded its statutory authority by issuing a memorandum declaring that an FRT is a machinegun when it cannot fire more than one shot "by a single

6

function of the trigger" because it requires the trigger to reset and perform additional actions to fire multiple shots.

The overturned Chevron doctrine requires clear and unambiguous statutory language, and the definition of a "machine gun" does not meet this standard for an FRT. Therefore, the indictment under 18 USC 922(o) is inconsistent with the principles of the overturned Chevron doctrine and should be dismissed.

**WHEREFORE**, it is respectfully requested from the Honorable to take notice of the information contained herein and that the motion to dismiss **BE GRANTED**.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 15th day of July of 2024.

**I HEREBY CERTIFY**: That on this same date I electronically filed the foregoing document with the Clerk of Court for the District of Puerto Rico, through the CM/ECF electronic filing system, which will provide notification of this filing to the United States Attorney's Office for the District of Puerto Rico.

*s/Luis Rafael Rivera*
**LUIS RAFAEL RIVERA**
USDC-PR 129411
LUIS RAFAEL RIVERA LAW OFFICES
CAPITAL CENTER BLDG. SUITE 401
239 ARTERIAL HOSTOS AVENUE
SAN JUAN, PUERTO RICO 00918
TELEPHONE: (787) 763-1780
FAX: (787) 763-2145
E-MAIL: luiswichyrivera@hotmail.com